## LEHIGH VALLEY TRANSIT CO. v. ZANES.

### No. 4448.

Circuit Court of Appeals, Third Circuit.

Feb. 19, 1931.

Rehearing Denied March 26, 1931.

See, also, 37 F.(2d) 381.

Reuben J. Butz, Thos. J. Perkins, and Milton C. Baldridge, all of Allentown, Pa., for appellant.

Burke & Burke, of New York City, George R. Booth, of Bethlehem, Pa., and Daniel Burke, of New York City (Thomas Gregory, Mary H. Donlon, and James Bundy Burke, all of New York City, of counsel), for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below Roger H. Zanes, a citizen of the state of New York, and hereafter called plaintiff, brought suit to recover from the Lehigh Valley Transit Company, a corporate citizen of Pennsylvania, and hereafter called defendant, the principal of certain mortgage bonds of the Bethlehem & Nazareth Passenger Railway Company, hereafter called Bethlehem-Nazareth. Defendant filed an affidavit of defense which on hearing the court held insufficient and entered judgment for plaintiff. Thereupon defendant took this appeal.

The facts in the case are: On May 1, 1899, Bethlehem-Nazareth, owning and then operating a street railway plant, executed a mortgage on all its property to a trust company as trustee, to secure bonds, some of which are here sued on. The bond issue was for one hundred and fifty bonds of $1,000 each, payable thirty years thereafter. On January 26, 1900 Bethlehem-Nazareth leased all its property for nine hundred and ninety-nine years to Lehigh Valley Traction Company, hereafter called Lehigh. The lease stipulated:

"Fourth: This lease and contract and all its covenants are to apply to the parties hereto and to the several successors and assigns, lessors and lessees of the said parties or their properties respectively; it being the intention of this agreement that all its covenants shall attach to the properties of the companies parties hereto and shall follow the ownership of these properties into whatsoever hands the ownership may pass with the same effect as if such parties had joined in this agreement."

It further provided:

"J—The 'Lessee' hereby covenants and agrees that simultaneously with the execution of this Indenture, it the 'Lessee' will endorse on each of the aforesaid mortgage bonds of the 'Lessor' aggregating One Hundred and Fifty Thousand Dollars ($150,000), a guarantee by the 'Lessee' of the payment of the principal and interest thereon according to their terms, which guarantee shall be in form as follows, to wit:

"The Lehigh Valley Traction Company, 'Lessee' of the Bethlehem and Nazareth Passenger Railway Company, hereby guarantees the payment of the principal and interest of the within bond of the Bethlehem and Nazareth Passenger Railway Company according to the terms of the said bonds, of the accompanying coupons and of the mortgage securing the same and of the aforesaid lease."

On December 1, 1899, Lehigh had mortgaged to the Guaranty Trust Company, hereafter called Guaranty, its street railway and other property to secure an issue of its bonds. Such mortgage by its terms included any leases Lehigh then had or might subsequently acquire, the effect of which was that, when on January 26, 1900, Bethlehem-Nazareth leased to Lehigh, the lease became subject to Lehigh's mortgage to Guaranty. Subsequently Lehigh's mortgage was foreclosed, its property, including the lease of Bethlehem-Nazareth to Lehigh, was sold to Frazier, Harrity, and Trexler, to whom, in pursuance of said sale, Guaranty and Lehigh assigned said lease. It should be here noted that prior to such foreclosure sale an effort was made by Bethlehem-Nazareth to terminate the lease, but Lehigh, by its receivers, in whose hands the latter was, declined to terminate, elected to retain the same, and paid all accrued rentals. Thereafter Frazier, Harrity, and Trexler, the buyers, organized the Lehigh Valley Passenger Railway Company, hereafter called Railway, and to it conveyed the lease given by Bethlehem-Nazareth to Lehigh. On November 3, 1905, the defendant, the Lehigh Valley Transit Company, hereafter called Transit, was organized by merger of Railway and other companies and succeeded to all the rights and obligations of Lehigh in its lease from Bethlehem-Nazareth, thereafter took possession, has held and enjoyed such possession, has paid all rentals provided by the lease, and from such rental the interest on the bonds has been paid up to the date of the bonds' maturity. By the judgment of the court below, Transit is now held liable for the principal of the bond.

It is true that we find no express covenant by Transit to pay these underlying bonds of Bethlehem-Nazareth, but actions can have as binding effect as covenants. Transit has and is now in possession of leased property of Bethlehem-Nazareth. It makes no offer to surrender such property or to cancel the lease. The lease, as we have seen from extract quoted, provided all its covenants should apply "to the several successors and assigns, lessors and lessees of the said parties." Moreover it stipulated that it was the intention of this agreement that all its covenants " * * * shall follow the ownership of these properties into whatsoever hands the ownership may pass with the same effect as if such parties had joined in this agreement." Having accepted a transfer of the lease, having taken possession of the leased property, and with this leased property being held by it in one hand, how can it with the other hand strike out the covenant in the lease to pay the bonds? For thirty years its rental has been applied to pay the interest on the bonds and with what grace can it in the face of an acceptance of a lease which extended its covenants to all successors now refuse to pay the bonds? In that regard the court below well said: "Without taking the time and space needed to quote the language of the covenants by which this was sought to be done, it is sufficient to say that if it was possible to impose upon any successor of the lessee the obligation to pay the bonds held by the plaintiff, this lease does it, because each successive owner of the leasehold estate is attempted to be made as fully bound to make the payment as if it had itself made the covenant."

Taking into consideration the continuity of the subject-matter, the actions of the parties through all these years, the possession and enjoyment, by virtue of the lease, of the mortgaged premises and the present retention of it by Transit, we are of opinion that the latter company has made a situation where the conduct of the parties and their several relations to each other have created, and the law implies and enforces, a liability on the part of Transit to pay these bonds. Our so holding has support in principle in Taenzer & Co. v. Chicago, R. I. & P., R. Co. (C. C. A.) 170 F. 240, 245, and in what was said by the Supreme Court in Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U. S. 408, 12 S. Ct. 188, 192, 35 L. Ed. 1055: "It is not necessary that a party should deliberately

agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations."

So holding, the judgment below is affirmed.